IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Imani Kinloch, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>International Longshoremen's )<br>Association Local 1422, and Marine )<br>Terminals Corporation East, )<br>)<br>    Defendants. )<br>_____ ) | Civil Action No. 2:23-cv-3640-BHH<br><br>**<u>ORDER</u>** |

  This matter is before the Court upon Plaintiff Imani Kinloch's ("Plaintiff") complaint, which alleges claims for *quid pro quo sexual* harassment, hostile work environment harassment, retaliation, and discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against Defendants International Longshoremen's Association Local 1422 ("Local 1422") and Marine Terminals Corporation East ("MTC East") (collectively, "Defendants").[1]  (ECF No. 1-1.)  On October 29, 2024, MTC East filed a motion for summary judgment, as did Local 1422.  (ECF Nos. 54, 58.)  Plaintiff filed responses in opposition, and Defendants filed replies.  (ECF Nos. 66, 67, 72, 74.)

  On July 24, 2025, in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2), D.S.C., United States Magistrate Judge Mary Gordon Baker issued a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant both motions for summary judgment and dismiss Plaintiff's case in full.  (ECF No. 80.)

---

[1] Plaintiff initially filed suit against three Defendants: Local 1422, MTC East, and South Carolina Stevedore's Association, but South Carolina Stevedore's Association was terminated as a Defendant on March 14, 2024, pursuant to a voluntary stipulation of dismissal filed on March 13, 2024.  (*See* ECF Nos. 1-1, 24, 25.)

Plaintiff filed objections to the Magistrate Judge's Report on August 7, 2025, and Defendants filed responses to her objections on August 21, 2025. (ECF Nos. 81, 82, 83.) On August 28, 2025, Plaintiff filed an unauthorized "reply" to her objections.[2] (ECF No. 84.) For the reasons set forth below, the Court overrules Plaintiff's objections, adopts and incorporates the Magistrate Judge's Report, and grants both Defendants' motions for summary judgment.

**STANDARDS OF REVIEW**

**I.    Federal Rule of Civil Procedure 56**

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See*

---

[2] Federal Rule of Civil Procedure 72(b)(2) provides: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). Thus, Rule 72(b) makes no provision for a "reply" to a response to objections. Nor do the Local Rules for the District of South Carolina. Instead, Local Rule 7.07, which actually discourages replies, contemplates them only in response to matters raised in "a motion or in accompanying supporting documents." Local Rule 7.07 (D.S.C.). *See, e.g.*, *Wells v. Wallace*, No. 2:19-1284, 2019 WL 5617935 (D.S.C. Oct. 31, 2019) (declining to consider a reply to a response to objections); *In re Zetia (Exetimibe) Antitrust Litig.*, MDL No. 2:18-md-2836, 2018 WL 6795832 (E.D. Va. Nov. 9, 2018) (unpublished) (striking a party's reply to objections to a report and recommendation).
  Here, the Court directed the Clerk's office to docket Plaintiff's reply, which for the most part merely rehashes her prior arguments, as a "supplement" to her objections, and the Court has considered the arguments raised in this filing in the interest of fairness. In the future, however, counsel for Plaintiff should seek permission from the Court prior to filing a reply to a response to objections.

*Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' " in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)); *see also Anderson*, 477 U.S. at 252.

## II.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

# DISCUSSION

## I.    The Magistrate Judge's Findings

In her Report, the Magistrate Judge first outlined the relevant background

information, including the relationship between Defendants and the collective bargaining agreement that governs the relationship between Defendants. (ECF No. 80 at 2-4.) Next, the Magistrate Judge outlined Plaintiff's allegations and Defendants' arguments in support of their motions for summary judgment. (*Id.* at 4-11.) Then, as explained in greater detail below, the Magistrate Judge found the following as to Plaintiff's *quid pro quo* and hostile work environment sexual harassment claims: (1) Plaintiff's harassment claims based on Earl Brown's ("Brown") alleged groping of Plaintiff are subject to dismissal for failure to exhaust administrative remedies; (2) no genuine issue of material fact exists as to whether Plaintiff suffered harassment within the limitations period; and (3) even if the claims are not time-barred, and even if Plaintiff had fully exhausted the groping allegation, Plaintiff's harassment claims fail on the merits. (*Id.* at 11-19.) Specifically, as to her *quid pro quo* claims, the Magistrate Judge found that the record does not contain evidence to create a genuine issue of material fact as to whether Brown's harassment affected tangible aspects of the compensation, terms, conditions, or privileges of Plaintiff's employment. (*Id.* at 19-22.) Similarly, the Magistrate Judge found that no genuine dispute of material fact exists as to whether Plaintiff presented a *prima facie* case of hostile work environment. (*Id.* at 23.)

The Magistrate Judge next considered Plaintiff's retaliation claims (following her January 2022 protected activity) and found: (1) that the criticism and scrutiny about which Plaintiff complains is insufficient as a matter of law to constitute a materially adverse action for purposes of a Title VII retaliation claim; (2) that Plaintiff failed to show that Defendants' proffered, nondiscriminatory reason for the June grievance filed against her by Bernard Parker ("Parker") (for switching jobs after a meal break, and based on which Plaintiff

4

received a 14-day suspension) is pretextual; and (3) that Plaintiff cannot show that the July grievance filed by Joseph Wright ("Wright") against Plaintiff (for a dress code violation, and based on which Plaintiff received a written warning) constitutes a materially adverse action for purposes of a Title VII retaliation claim, and, even if she could, she still cannot establish that Defendants' proferred, nondiscriminatory reason is pretextual.  (*Id.* at 25-33.)

Lastly, the Magistrate Judge found that any Title VII claims asserted against Local 1422 in its capacity as a labor organization are subject to dismissal because Plaintiff has failed to offer sufficient evidence to support her allegations of discrimination, harassment, and retaliation.  (*Id.* at 34-35.)

## II.    Plaintiff's Objections to the Magistrate Judge's Report

Plaintiff filed lengthy objections to the Report, wherein she asserts that the Magistrate Judge's Report is clearly erroneous and contrary to law, and that it rests on factual and legal errors.[3]  (ECF No. 81 at 1.)  On pages two through fourteen of her objections, Plaintiff repeats various factual allegations and asserts that they present genuine disputes of material fact as to her claims.  (*See* ECF No. 81 at 2-14.)  Then, on pages fifteen through eighteen of her objections, Plaintiff repeats her argument that Brown and Kinloch were jointly employed by Local 1422 and MTC East, and she contends that Defendants' conflicting assertions create a genuine dispute of material fact as to which entity employed Brown, supporting submission of the question to the jury.

---

[3] As a preliminary matter, the Court notes that Plaintiff's objections and her reply to Defendants' responses to her objections, *see supra* note 2, are somewhat disjointed and do not follow the same order as the Magistrate Judge's findings.  For example, in the Report, the Magistrate Judge first determined that Plaintiff's harassment claims are subject to dismissal for failure to exhaust before finding that the claims are also untimely.  (ECF No. 80 at 12-19.)  In her objections, however, Plaintiff addresses these issues in the opposite order.  In the interest of fully and fairly considering all of Plaintiff's objections, this order addresses Plaintiff's objections in the same order in which her filings present them.

As to Plaintiff's specific objections regarding the issue of joint employment, the Court notes that the Magistrate Judge did not even reach the issue in her Report. (ECF No. 80 at 11.) Instead, the Magistrate Judge found that Plaintiff's claims fail on the merits regardless of whether Defendants constitute her joint employers.

After *de novo* review, and for the various reasons set forth more fully below, the Court fully agrees with the Magistrate Judge that Plaintiff's claims fail on the merits *regardless of whether Defendants constitute her joint employers*. Thus, the Court finds that the Magistrate Judge did not err in declining to consider Plaintiff's joint-employment argument, and the Court likewise declines to reach the issue.

**A.     Plaintiff's Harassment Claims**

Plaintiff next objects that the Magistrate Judge erred in dismissing Plaintiff's Title VII claims against Local 1422 as a labor organization (as opposed to an employer), asserting that the Magistrate Judge overlooked critical facts that give rise to a genuine issue of material fact. (ECF No. 81 at 18.) Here again, after *de novo* review, the Court finds Plaintiff's objection unavailing. Instead, for the various reasons set forth more fully below, the Court agrees with the Magistrate Judge that Plaintiff's claims fail on the merits. As the Magistrate Judge noted, to hold Local 1422 liable for Title VII violations as a labor union, Plaintiff must first show that Local 1422 directly engaged in, instigated, or actively supported discriminatory or retaliatory acts, but because Plaintiff has not pointed to sufficient evidence to create a genuine dispute of fact as to any such acts, she cannot

6

demonstrate that Local 1422 is directly liable as a labor organization.[4]

Plaintiff next objects to the Magistrate Judge's finding that Plaintiff's harassment claims are time-barred. (ECF No. 81 at 20.) According to Plaintiff, the Magistrate Judge's finding is based on clear factual and legal error, and Plaintiff asserts that, even if the Court excludes Plaintiff's testimony about Brown's alleged groping of her, "her sexual harassment claims remain actionable based on multiple other incidents of unlawful conduct." (*Id.*) Plaintiff argues that the Magistrate Judge erred by failing to apply the continuing violation doctrine to her hostile work environment claim because "several of the acts contributing to Ms. Kinloch's hostile work environment occurred" within 300 days of filing her EEOC charge. (*Id.* at 21.) Specifically, Plaintiff points to "the retaliatory treatment of her brother, the November 12, 202[1], attempt to deny her and her brother work[5] and Brown's continued refusal to hire her for the car boat in retaliation for rejecting his sexual advances." (*Id.*) Plaintiff also asserts that the Magistrate Judge erred in finding her *quid pro quo* harassment claim untimely, asserting that "Ms. Kinloch testified that after she stopped submitting to Brown's sexual demands in April or May of 2020, he denied her opportunities to work

---

[4] In her objections, Plaintiff asserts that she reported harassment to Local 1422 delegates in the summer of 2022, and she asserts that they did nothing despite the seriousness of her allegations. (ECF No. 81 at 19.) Plaintiff asserts that she again reported the harassment to another representative in November of 2021, and no action was taken.

After *de novo* review, the Court finds Plaintiff's arguments unsupported by the record. Rather, as the Magistrate Judge correctly noted, "[t]hough Plaintiff claims that she reported Brown's harassment prior to filing her formal grievance and nothing was done, the record evidence shows that Plaintiff did not actually tell anyone Brown was harassing her; she instead reported that he was picking her less because she 'didn't want to participate in certain things.'" (ECF No. 80 at 22, n. 12 (quoting ECF No. 66-1 at 73).) *See Strickland v. United States*, 744 F. Supp. 3d 477, 570 (W.D.N.C. 2024) ("Vague complaints are not enough to put an employer on notice of sexual harassment -- a plaintiff must give sufficient details and specifics about the alleged conduct.") (citations omitted).

[5] As the Magistrate Judge noted in her Report, Plaintiff was, in fact, hired to work on this date. (*See* ECF No. 80 at 22, n.9 (citing ECF Nos. 66 at 17; 67 at 22; 66-17 at 5; 67-17 at 5).)

beginning in April through January 2021, well within the 300-day filing window." (*Id.* at 22.)

After *de novo* review, the Court is not convinced by Plaintiff's objections as to the timeliness of her *quid pro quo* or hostile work environment harassment claims.[6] First, a review of the relevant dates is important. Plaintiff filed her EEOC charge on March 28, 2022, and 300 days prior to that was June 1, 2021. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff testified that Brown stopped groping her in April or May of 2021 (prior to the June 1 statutory deadline), and Plaintiff further testified that Brown stopped picking her for work in April or May of 2021 (also prior to the June 1 statutory deadline), and at her deposition she could not identify any date during the statutory period when she appeared at the Local 1422 dispatch hall but Brown did not select her for an MTC East work order. (*See* ECF No. 54-3 at 37.) After Plaintiff's deposition, Local 1422 provided records indicating that Brown selected Plaintiff for an MTC East work order ten times after April of 2021, namely, May 17; June 8, 14, 19, and 30; July 20, August 3 and 18; September 7; and November 12. (*See* ECF Nos. 56-5, 56-6.) Plaintiff then filed supplemental interrogatory answers,[7] identifying the following dates within the statutory period when Brown allegedly failed to hire her: June

---

[6] To establish a *prima facie* case for *quid pro quo* sexual harassment, a plaintiff must show: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) her "reaction to the harassment affected tangible aspects of [her] compensation, terms, conditions, or privileges of employment"; and (5) the employer knew or should have known of the harassment but failed to take remedial action. *Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011). To demonstrate sexual harassment based on a hostile work environment, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3), which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is attributable to the employer. *Id.* at 220 (quotation marks and citations omitted).

[7] Defendants assert that Plaintiff's supplemental interrogatory answers are nothing more than a "sham affidavit" that contradicts Plaintiff's deposition testimony for the purpose of avoiding summary judgment. Although the Court is inclined to agree with Defendants, the Court also agrees with the Magistrate Judge that Plaintiff's claims fail regardless of whether the Court considers the dates identified by Plaintiff in her supplemental interrogatory answers.

9, 2021; August 6, 12, and 13, 2021; September 21, 27, and 28, 2021; October 9, 18, 23, and 24, 2021; November 14, 2021; December 9, 2021; and January 16, 2022. (ECF No. 80 at 17 (citing ECF No. 56-7 at 18)).

In the Report, the Magistrate Judge carefully considered these dates in light of Plaintiff's testimony and journal entries, which indicated–contrary to her supplemental interrogatory answers–that Plaintiff was not available to work on June 9, August 6, 12, and 13, October 18, and November 14, 2021. (*See* ECF No. 80 at 18.) The Magistrate Judge also noted that on five other dates identified by Plaintiff in her supplemental interrogatory answers, headers chose workers with lower seniority than Plaintiff, indicating that Plaintiff would have been chosen to work had she sought work on those dates.[8] As for the remaining dates identified by Plaintiff, the Magistrate Judge noted that Plaintiff testified that she did not know if Brown failed to select her on those dates. (ECF No. 80 at 18 (citing ECF No. 54-3 at 37).) Thus, the Magistrate Judge concluded: "Plaintiff's conclusory allegations and mere speculation are insufficient bases on which to deny summary judgment, and the Court may not [ ] build inference upon inference to relieve Plaintiff of her burden to establish timeliness." (*Id.*)

Here, based on the evidence of record, the Court finds no error in the Magistrate Judge's timeliness analysis, and the Court finds Plaintiff's continuing violation argument unavailing. Therefore, for the specific reasons set forth by the Magistrate Judge and for the reasons set forth herein, the Court concludes that Plaintiff's harassment claims are

---

[8] As Defendant MTC East astutely points out in response to Plaintiff's objections: "Plaintiff cannot have it both ways. She cannot rely upon the Local 1422 seniority rules to discount Mr. Brown's selection of her for MTC East work orders but then disclaim those same rules when they contradict her unsupported assertions." (ECF No. 82 at 9.)

untimely.

In her objections, Plaintiff next asserts that the Magistrate Judge erred in excluding evidence of Brown's alleged groping of Plaintiff based on Plaintiff's failure to exhaust her administrative remedies. (ECF No. 81 at 23.) Plaintiff asserts that her groping allegation is reasonably related to the conduct detailed in her EEOC charge and is part of the same pattern of sexual harassment outlined in the charge. (*Id.*)

In the Report, the Magistrate Judge carefully considered this issue and noted that, typically, she would be inclined to agree with Plaintiff and find that the groping allegation is reasonably related to the claims set forth in Plaintiff's EEOC charge. (*See* ECF No. 80 at 15.) Here, however, the Magistrate Judge explained that this case presents a unique scenario where Plaintiff's charges described a pattern of sexual harassment and inappropriate behavior on the part of Brown, *but the charges did not contain any allegations that Brown ever physically touched her*. The Magistrate Judge further noted that Plaintiff's sexual harassment claims *were investigated*, and the investigation did not uncover any information about Brown's alleged groping of Plaintiff because Plaintiff did not tell anyone about the alleged groping until March 15, 2024, *more than a year after she filed this lawsuit*. (*Id.* at 16.) Ultimately, the Magistrate Judge concluded that, because Plaintiff did not include her groping allegation in her grievance against Brown, her testimony to the PGC, her EEOC charges, her complaint in this action, *or* her initial interrogatory answers, Defendants did not have notice of or the opportunity to investigate the allegation. (*Id.*)

After *de novo* review, the Court wholly agrees with the Magistrate Judge's findings regarding Plaintiff' failure to exhaust her administrative remedies as to her groping allegation. Although the Court is mindful of the sensitive nature of Plaintiff's groping

10

allegation, under the particular circumstances of this case, the Court cannot conclude that this allegation is reasonably related to the conduct detailed in her EEOC charge and is part of the same pattern of sexual harassment outlined in the charge.  For the same reasons set forth by the Magistrate Judge, therefore, the Court finds that Plaintiff's claims based on Brown's alleged groping of her are subject to dismissal based on her failure to exhaust her administrative remedies.  *Chacko v. Patuxent Inst.*, 429 F3d 505, 509 (4th Cir. 2005).

In her objections, Plaintiff next asserts that the Magistrate Judge erred in dismissing Plaintiff's *quid pro quo* and hostile work environment sexual harassment claims on the merits, asserting that "a failure to be hired for day labor is plainly a meaningful adverse employment action." (ECF No. 81 at 25.) According to Plaintiff, the Magistrate Judge failed to credit Brown's admission that he stopped hiring Plaintiff to work on the car boat, and Plaintiff further asserts that Brown's admission that he stopped selecting Plaintiff because she was "slacking off" supports a finding of pretext because there is no evidence that Brown ever documented any performance issues on the part of Plaintiff or filed a grievance or otherwise disciplined her.  (*Id.* at 25-26.)

Contrary to Plaintiff's objections, however, the Magistrate Judge *twice* considered Brown's statement the he stopped selecting Plaintiff for work.  First, the Magistrate Judge explained that "[a]lthough the record includes testimony from Brown in which he told the PGC that he 'stopped regularly picking [Plaintiff] because she was shirking her work,' [ ] this evidence does not raise a genuine issue of material fact as to whether Brown failed to hire Plaintiff on any specific instances *within the statutory period.*"  (ECF No. 80at 17, n. 8 (quoting ECF Nos. 66-10 at 1; 67-10 at 1) (emphasis in original).)  Second, the Magistrate Judge again noted Plaintiff's reliance on Brown's testimony but reiterated that the evidence

11

does not create a genuine dispute of fact as to whether Brown failed to hire Plaintiff *within the statutory period*. (*See id.* at 21-22. (emphasis in original).)

After *de novo* review, the Court finds no error in the Magistrate Judge's analysis, and the Court disagrees with Plaintiff that the Magistrate Judge failed to view Brown's admission in the light most favorable to Plaintiff.[9] As the Magistrate Judge correctly determined, to conclude that Brown's statement indicates that he did not select Plaintiff on a particular date within the statutory period would require the Court to stack inference upon inference to sustain her burden of proof on the fourth prong of her *quid pro quo* harassment claim; but the evidence, when viewed in light most favorable to Plaintiff, simply does not raise a genuine issue of material fact as to whether Brown failed to hire Plaintiff within the statutory period.

Furthermore, the Court finds no merit to Plaintiff's objection that, "by emphasizing the *within the statutory period*, the Magistrate Judge appears to implicitly concede that Plaintiff's evidence raises a genuine issue of material fact that Ms. Kinloch suffered a tangible action outside the limitations window." (ECF No. 81 at 27.) Likewise, the Court finds no merit to Plaintiff's objection that "[t]he Magistrate's emphasis on the absence of specific dates and times when Plaintiff was not hired by Brown imposes an unreasonable burden that fails to account for the unique nature of longshore work." (ECF No. 81 at 26.)

---

[9] Nor does the Court find that the Magistrate Judge erred in her consideration of Plaintiff's arguments concerning Brown's attempt not to hire her and her brother on November 12, 2021, and Plaintiff's work for Charleston Stevedoring Company. (ECF No. 80 at 22, n.11.) As the Magistrate Judge explained, Plaintiff was, in fact, hired to work on November 12, 2021, and "[t]o the extent Plaintiff claims she suffered a tangible employment action because she had to seek work driving trucks (for longer hours with less pay) after she denied Brown's advances, this claim is belied by record evidence showing that Plaintiff became a certified truck driver in September 2021 and was then obligated to accept truck assignments, when available, for three years following. (*Id.* (citations omitted).)

To accept these objections would turn the summary judgment standard on its head, but as the Magistrate Judge correctly concluded, Plaintiff simply cannot rely on her own conclusory allegations, speculation, or the building of one inference upon another to support her harassment claims.

Plaintiff next objects that her dispatch records create a genuine issue of material fact because they show a significant drop in work assignments after she rejected Brown's advances.  (ECF No. 81 at 28.)  Here again, the Magistrate Judge specifically considered this argument in her Report and found that it without merit.  (*See* ECF No. 80 at 22, n. 11.)  As the Magistrate Judge explained, Plaintiff's dispatch records do *not* support a finding that she was dispatched less after May 2021; to the contrary, the records show that her average rate of selection actually increased after May 2021.

After *de novo* review of the records at issue, the Court agrees with the Magistrate Judge and concludes that Plaintiff's records merely show that Brown selected Plaintiff for each of the 10 MTC East work orders for which he had the opportunity to within the statutory period.  (*See* ECF Nos. 82 at 8; 72 at 9; 72-2; 72-3 at 3-4.)

Plaintiff next objects that the Magistrate Judge erred in dismissing Plaintiff's hostile work environment claims on the merits.  (ECF No. 81 at 35.)  Plaintiff states: "First[,] wihle Plaintiff did not tell anyone about the groping claims[,] she did tell Ford, Green[,] and Simmons that Brown would [not] hire [her] unless she did 'certain things,'" and Plaintiff claims that Ford understood that Plaintiff was reporting sexual harassment. (*Id.*)  Second, Plaintiff asserts that Brown was her supervisor such that Defendants are strictly liable.  According to Plaintiff, the Magistrate Judge erred by overlooking Brown's supervisory authority.  (*Id.* at 31.)

13

After *de novo* review, the Court is not convinced by Plaintiff's objections.  First, the Court agrees with the Magistrate Judge that "[t]he overall record does not suggest that Defendants knew or should have known that Plaintiff's statement that she 'didn't want to participate in certain things," was an attempt to report sexual harassment."  (ECF No. 80 at 22, n. 12.)  Second, as to Plaintiff's arguments regarding Brown's supervisory authority, the Court concludes that Brown was not an MTC East supervisor while he was at the Local 1422 dispatch hall; nor does the record support a finding that Local 1422 employed Brown as a supervisor.  Relatedly, the Court finds that even if Brown is considered a supervisor, Defendants are entitled to the *Faragher/Ellerth* defense, and Plaintiff's objections do not support a different conclusion.[10]  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  As the Magistrate Judge correctly noted, it is undisputed that Plaintiff did not inform *anyone* of Brown's alleged groping until more than a year after she filed this civil action, and:

> To the extent Plaintiff claims that her hostile work environment claims are based upon any other harassing conduct from Brown, [ ] the PGC took uncontested remedial actions after Plaintiff filed a grievance against Brown. As explained, the PGC held a hearing shortly after Plaintiff filed her grievance in January of 2022. [ ] At the conclusion of the hearing, the PGC suspended Brown for sixty days and hired an independent investigator to look into Brown's alleged actions. [ ] Once the investigation concluded, Brown was removed as  a headed and sub header, and Plaintiff never worked with him again.

(ECF No. 80 at 23, n. 13 (citations omitted).)

---

[10] A defendant is entitled to the *Faragher/Ellerth* affirmative defense where it establishes that (1) "it exercised reasonable care to prevent and correct any harassing behavior," and (2) the employee "unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *McKinnish v. Brennan*, 630 F. App'x 177, 183 (4th Cir. 2015). "[D]issemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment." *Id.* (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 268 (4th Cir. 2001)).

### B.     Plaintiff's Retaliation Claims[11]

In her objections, Plaintiff next asserts that the Magistrate Judge erred in dismissing Plaintiff's retaliation claims.[12] (ECF No. 81 at 33.) According to Plaintiff, the Magistrate Judge misapplied the legal standard and improperly dissected the evidence into discrete events rather than considering the totality of the circumstances. (*Id.*) Plaintiff states:

> Ms. Kinloch engaged in clear protected activity when she filed a grievance against Brown on January 13, 2022, and testified before the PGC on January 20, 2022. The retaliation that followed was neither trivial nor speculative—it was swift, repeated, and escalated over time. She was threatened by McNeil, targeted and "picked on" by Smith and Gadsden, and subjected to false and punitive grievances, all culminating in a 14-day suspension and forced committee appearances.

(*Id.*)

After *de novo* review, the Court finds no merit to Plaintiff's objections, and the Court finds that the Magistrate Judge's findings as to Plaintiff's retaliation claims are well supported by both the undisputed evidence of record and the applicable law. First, the Court notes that Plaintiff has not pointed to any evidence to show that any of the people who allegedly retaliated against her even knew that she had filed a grievance against Brown. Even overlooking this, however, the Court wholly agrees with the Magistrate Judge

---

[11] Plaintiff's complaint appears to allege Title VII discrimination claims against both Defendants, but Plaintiff presents no new allegations in support of these claims, and these claims rely entirely on the allegations underlying her other Title VII claims. (ECF No. 1-1 at 21.) In her Report, the Magistrate Judge noted that Defendants are entitled to summary judgment on Plaintiff's discrimination claims for the same reasons that they are entitled to summary judgment on her other claims. (ECF No. 80 at 33, n. 22.) Plaintiff does not appear to object to this finding, and the Court agrees with the Magistrate Judge.

[12] Under the applicable *McDonnell Douglas* burden-shifting framework, a Plaintiff must first make a *prima facie* showing of retaliation by proving that: (1) she engaged in a protected activity; (2) her employer took a materially adverse action against her; and (3) there was a causal link between the two events. *See Perkins v. Int'l Paper Co.*, 936 F.3d at 206 n.4 (4th Cir. 2019). If Plaintiff can establish a *prima facie* showing of retaliation, then the burden shifts to Defendants to rebut the presumption of retaliation by articulating a non-retaliatory reason for the actions. Plaintiff then bears the ultimate burden of proving that the proffered reason is pretext for unlawful retaliation.

that the alleged criticism and heightened scrutiny of which Plaintiff complains does not rise to the level of a materially adverse action under the applicable law. *See Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019) (noting that personal conflicts do not constitute retaliation). Likewise, with respect to the June grievance filed against Plaintiff by Parker based on a "work rule violation," the Court notes that Plaintiff admitted that she committed the violation at issue, and Plaintiff has not shown that Defendants' legitimate, non-retaliatory reasons for Plaintiff's suspension is pretext for unlawful retaliation. Similarly, with respect to the July grievance filed against Plaintiff by Wright for a dress code violation, Plaintiff received only a written warning, which is insufficient to establish a materially adverse action without any subsequent adverse consequences, of which Plaintiff alleges none. *See, e.g.*, *Chughtai v. Kasier Permanente*, No. PX-15-2963, 2018 WL 3049198, at *8 (D. Md. June 20, 2018) (dismissing retaliation claim where the plaintiff failed to allege that the written reprimand led to "actual, adverse, job-related consequences," noting that "plaintiff's belief that a written warning could have impacted later job performance evaluations was insufficient"). In addition, the Court finds that even if the written warning could be considered materially adverse, Plaintiff has offered no evidence other than her own conclusory assertions to show that Defendants' proferred reason is pretext for unlawful retaliation. The Court therefore overrules Plaintiff's objections as to her retaliation claims.

As noted in footnote 2, Plaintiff filed an unauthorized "reply" to Defendants' responses to her objections, which for the most part merely rehashes her prior objections. (ECF No. 84.) First, Plaintiff first repeats her summary of relevant facts. (*Id.* at 2-6.) Second, Plaintiff repeats her arguments concerning the issue of joint employment by Defendants. (*Id.* at 6-8.) For the reasons previously set forth above, however, the Court

agrees with the Magistrate Judge that it is not necessary to reach this issue because Plaintiff's claims fail on the merits.

Next, Plaintiff repeats her argument that the Magistrate Judge erred in overlooking Brown's supervisory authority.  (*Id.* at 8-9.)  Plaintiff then repeats her arguments as to the Magistrate Judge's dismissal of her hostile work environment claim and the timeliness of Plaintiff's harassment claims.  (*Id.* at 9-11.)  And Plaintiff reasserts that there is a genuine dispute of material fact as to whether Plaintiff suffered a tangible employment action.  (*Id.* at 11-13.)  Plaintiff further contends that the Magistrate Judge erred by finding that Plaintiff's report to Green and Ford did not constitute protected conduct and by allowing Defendants to avail themselves of the *Faragher/Ellerth* defense when they failed to follow the applicable policy and forced Plaintiff to submit to an intimidating procedure.  (*Id.* at 14-16.)  Lastly, Plaintiff repeats her argument that Local 1422 is liable under Title VII as a labor organization, and she rehashes her arguments regarding her retaliation claims.  (*Id.* at 16-20.)

Here, the Court notes that it previously addressed these issues; nevertheless, even after a second *de novo* review, the Court finds nothing in Plaintiff's reply to alter the Court's ultimate analysis.  In summary, for the reasons set forth by the Magistrate Judge in her Report and for the reasons set forth herein, the Court finds that (1) Plaintiff's harassment claims are subject to dismissal based on Plaintiff's failure to exhaust her administrative remedies to the extent these claims stem from her allegation that Brown groped her; (2) even if Plaintiff had fully exhausted her harassment claims, they are nevertheless subject to dismissal as untimely, and the continuing violation doctrine does not save them, as no genuine issue of material fact exists as to whether Plaintiff suffered harassment within the

statute of limitations; (3) even if Plaintiff had fully exhausted her harassment claims, and even if the claims are timely, they nonetheless fail on the merits; (4) Plaintiff's retaliation claims also fail on the merits and are insufficient to withstand summary judgment; and (5) because Plaintiff has not set forth sufficient evidence to support her claims for harassment, discrimination, and retaliation, she cannot show that Local 1422 is liable as a labor organization.

## CONCLUSION

Based on the foregoing, the Court **overrules** Plaintiff's objections (ECF Nos. 81, 84); the Court **adopts and specifically incorporates** the Magistrate Judge's Report (ECF No. 80); and the Court **grants** both Defendants' motions for summary judgment (ECF Nos. 54, 58), thereby dismissing Plaintiff's case in full.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
Bruce Howe Hendricks
United States District Judge

September 19, 2025
Charleston, South Carolina